

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# FELONY

### INDICTMENT FOR MAIL FRAUD AND MAKING FALSE STATEMENTS TO FEDERAL AGENTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 23-00047 |
| v. | * | SECTION: SECT. MAG. 2 |
| DONDRE MORGAN a.k.a "Dre" | * | VIOLATIONS: 18 U.S.C. § 1341<br>18 U.S.C. § 1001(a)(2)<br>18 U.S.C. § 2 |
| | * * * | |

The Grand Jury charges that:

### COUNTS 1 - 2
(18 U.S.C. § 1341 – Mail Fraud)

**A.   AT ALL TIMES MATERIAL HEREIN:**

#### Introduction

1. The defendant, **DONDRE MORGAN**, a.k.a. "Dre" ("MORGAN"), was a resident of the Eastern District of Louisiana and the Southern District of Texas.

2. Current was a financial technology company that provided financial services including issuing debit cards.

___Fee__ USA__
_√_Process_____
_X_Dktd_____
___CtRmDep_____
___Doc.No._____

3. Current debit cards were mailed via the United States Postal Service ("USPS") from a processing center located in Nashville, Tennessee.

4. Cash App and PayPal were mobile payment services allowing users to transfer money to others using an electronic platform such as a mobile phone.

5. **MORGAN** maintained accounts with:

   a. PayPal – Virtual bank account ending x4511;

   b. Current – Account ending x3339; and

   c. Cash App – Active account token ending in – payzv.

6. Sharnae Every ("Every") was the girlfriend of **MORGAN** and she maintained a Current account ending x0051.

## The Small Business Administration

7. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

8. As part of its efforts, the SBA provided business loans through banks, credit unions, and other lenders. Those loans had government backed guarantees.

## The CARES Act

9. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted in or about March 2020. The CARES Act provided emergency financial assistance to the millions of Americans suffering the economic effects of the COVID-19 pandemic.

## The Paycheck Protection Program

10.     One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

11.     In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

12.     Among the types of businesses eligible for a PPP loan were individuals who operated under a "sole proprietorship" business structure. In order to be eligible to receive such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship, as typically reported to the IRS on Form 1040, Schedule C, for a given tax year. The lending institution or loan processor used this information to calculate the amount of money the individual was entitled to receive under the PPP. The maximum PPP loan amount for a sole proprietor with no employees was $20,833.00.

13.     A PPP loan application was required to be processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own

3

monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

14. PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

15. Capital Plus Financial ("Capital Plus") and Prestamos were two of many designated financial institutions authorized to process PPP loans that were guaranteed by the SBA.

16. Blueacorn was created during the COVID-19 pandemic to assist small businesses in securing PPP loans.

17. Blueacorn would transmit PPP loan applications to approved lenders including Capital Plus and Prestamos.

18. Approved PPP loans were generally funded by wiring the proceeds of the loan into the applicant's bank account, Current account, or another designated financial institution.

B. **THE SCHEME AND ARTIFICE TO DEFRAUD:**

1. It was part of the scheme and artifice to defraud, that on or about February 28, 2021, through the date of this Indictment, **MORGAN**, Every, and others known and unknown to the Grand Jury defrauded the SBA and other designated financial institutions of approximately $1,142,041.00 through the submission of approximately 110 fraudulent PPP loan applications.

2. It was further part of the scheme and artifice to defraud that, Every recruited friends and family members primarily via Facebook to send Every their personal and bank information in

4

exchange for "free money." **MORGAN** assisted in recruiting various friends and family members by speaking with them in person or texting them, telling them to contact Every.

3. It was further part of the scheme and artifice to defraud that Every created a fictitious business invoice for a business called "Natural Hair Afro, LLC, Houma, LA 70360" and included this fictitious business invoice in nearly all of the fraudulent PPP loan applications.

4. It was further part of the scheme and artifice to defraud that Every prepared and submitted false and fraudulent PPP sole proprietor loan applications via various online portals including, but not limited, to Blueacorn.

5. It was further part of the scheme and artifice to defraud that Every created false and fraudulent invoices, bank statements, and federal tax forms ("Schedule C") in order to prepare the fraudulent PPP loan applications.

6. It was further part of the scheme and artifice to defraud that Every falsely certified that the application and the information provided in the supporting documents were true and accurate when she electronically submitted the fraudulent PPP loan applications.

7. It was further part of the scheme and artifice to defraud that Every required an upfront application fee of approximately $45.00 to $120.00 from individuals she recruited to prepare and submit the fraudulent PPP application. Every received these payments primarily via Cash App. **MORGAN** also received "application fees" into his Cash App account which he then transferred to Every.

8. It was further part of the scheme and artifice to defraud that Every required a payment of approximately $3,500.00 from individuals she recruited when the PPP loan was funded. Every received these funds into her Current account or her Cash App account. When Every's Current account was suspended/closed, **MORGAN** received these post loan payments

into his Current account. Some of these funds were then transferred to **MORGAN's** Cash App account and then to Every's Cash App account.

9. It was further part of the scheme and artifice to defraud that **MORGAN** received a PPP loan for $20,365, using a fraudulent bank statement and Schedule C. These illicitly obtained funds were deposited into **MORGAN's** virtual bank account with PayPal. Approximately $8,000 of these funds were subsequently transferred to Every's PayPal account.

10. It was further part of the scheme and artifice to defraud and, in an effort to conceal the same, **MORGAN** lied to federal agents about his relationship with Every and participation in the scheme.

C. **THE OFFENSE**:

Beginning on or about February 28, 2021, and continuing until the date of this Indictment, in the Eastern District of Louisiana and elsewhere, **DONDRE MORGAN, a.k.a "Dre,"** Every, and others known and unknown to the Grand Jury, with the intent to defraud, devised and willfully participated in, with knowledge of its fraudulent nature, the above-described scheme and artifice to defraud and obtain money and property from the SBA and other designated financial institutions by materially false and fraudulent pretenses, representations, and promises.

On or about the approximate dates listed below, in the Eastern District of Louisiana and elsewhere **MORGAN**, Every, and others known and unknown to the Grand Jury, for the purpose of executing or attempting to execute the aforesaid scheme and artifice to defraud set forth in Part B, did knowingly cause to be delivered by the United States Postal Service and interstate commercial carriers, according to the directions thereon, the following mail matter:

| COUNT | DESCRIPTION OF MAILING |
|---|---|
| 1 | March 15, 2021, Individual A's Current card ending x9380 was mailed via the USPS from Nashville, TN to C*** Solar Trlr Park, Thibodaux, LA 70301. |
| 2 | March 18, 2021, Individual B's Current card ending x2783 was mailed via the USPS from Nashville, TN to *** Mall Circle Apt. **, Houma, LA 70364. |

In violation of Title 18, United States Code, Sections 1341 and 2.

### COUNT 3
(18 U.S.C. § 1001(a)(2) – Making False Statements To Federal Agents)

**A.    AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A and B of Counts 1 and 2 are hereby re-alleged and incorporated herein by reference.

**B.    THE OFFENSE:**

On or about April 7, 2022, in the Eastern District of Louisiana, **DONDRE MORGAN, a.k.a "Dre,"** did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, when he lied to federal agents with the U.S. Department of Veterans Affairs, Office of Inspector General, Criminal Investigations Division, when he said he did not know Every, claimed he had nothing to do with PPP loans, did not have a Current account, and did not receive a PPP loan himself. The statements and representations were false because, as **MORGAN** then and there knew, he previously lived with Every, helped Every with her PPP loan scam, had a Current account, and received his own PPP loan.

In violation of Title 18, United States Code, Section 1001(a)(2).

## **NOTICE OF FORFEITURE**

1.    The allegations of Counts 1 through 3 of this Indictment are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2.    As a result of the offenses alleged in Counts 1 and 2, the defendant, **DONDRE MORGAN, a.k.a. "Dre,"** shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property, real or personal, which constitutes or is derived from, proceeds traceable to said offenses.

3.    As a result of the offense alleged in Count 3, the defendant, **DONDRE MORGAN, a.k.a. "Dre,"** shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(3), any property, real or personal, which constitutes or is derived from, proceeds traceable to said offense.

4.    If any of the above-described property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.



DUANE A. EVANS
UNITED STATES ATTORNEY

BRIAN M. KLEBBA
EDWARD J. RIVERA
MARY KATHERINE KAUFMAN
Assistant United States Attorneys

New Orleans, Louisiana
March 10, 2023

FORM OBD-34

No. _____

UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

Criminal _____ Division

THE UNITED STATES OF AMERICA

vs.

DONDRE MORGAN,
a.k.a. "Dre"

INDICTMENT

INDICTMENT FOR MAIL FRAUD AND MAKING FALSE STATEMENTS TO FEDERAL AGENTS

VIOLATIONS: 18 U.S.C. § 1341
18 U.S.C. § 1001(a)(2)
18 U.S.C. § 2

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

A true bill.

_____

Foreperson

Filed in open court this _____ day of _____ A.D. 2023.

_____

Clerk

Bail, $ _____

_____

BRIAN M. KLEBBA
Assistant United States Attorney